IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:15-CR-20783 |
| | ) | |
| | ) | Honorable Sean Cox |
| | ) | |
| LEROY CANNON, JR. | | |
| _____/ | | |

SANFORD A. SCHULMAN
Attorney for Defendant
LEROY CANNON
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: saschulman@comcast.net

STEVEN P. CARES
U.S. Attorney's Office
211 W. Fort Street
Detroit, MI 48226
313-226-9139
Email: steven.cares@usdoj.gov

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
LEROY CANNON
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: attorneystefanielambert@gmail.com

**DEFENDANT, LEROY CANNON'S RENEWED MOTION FOR
RESENTENCING AND REQUEST FOR EARLY RELEASE**

1

NOW COMES the Defendant, LEROY CANNON JR., by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and states in support of Motion to Resentence Defendant and Request for Early Release as follows:

1. On May 11, 2016, the defendant, LEROY CANNON JR., pled guilty to distribution of heroin, in violation of 21 U.S.C. § 841(a)(1).

2. On September 14, 2016, this Honorable Court sentenced LEROY CANNON JR. to a total term of 188 months with 4 years supervised release upon release from imprisonment.

3. Mr. Cannon is serving his sentence at FCI Milan, in Milan, Michigan. Mr. Cannon has a release date of December 31, 2028.

4. Mr. Cannon suffers from diabetes and high blood pressure. (See Exhibit 1).

5. Mr. Cannon's medical condition makes him a high risk for Coronavirus (COVID-19) because COVID-19 is particularly harsh on patients with diabetes and high blood pressure.

6. The defendant to respectfully request that his sentence be modified pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic.

7.  As a result of both his medical status, should Mr. Cannon become infected, he faces a substantial risk of suffering a severe form of the disease or even death.

8.  The defense maintains that the risk COVID-19 poses to Mr. Cannon's health amounts to an "extraordinary and compelling" circumstance that warrants transferring Mr. Cannon to supervised release with a special condition of home confinement for the duration of his sentence.

9.  As of July 21, 2020, only twenty-five percent of BOP inmates have received a COVID-19 test. The BOP has a total of 142,944 inmates in custody, and only 36,012 tests have been completed or are pending. Additionally, 100 inmates and staff have died from COVID-19, and there are currently 4,517 inmates and staff currently positive with COVID-19, and 6,195 inmates in staff that have been positive for COVID-19 in the past bringing the total to 10,712 of current and past positive cases of COVID-19 for the twenty-five percent of the population tested. BOP: COVID-19 Update, July 25, 2020, https://www.bop.gov/coronavirus/.

10.  As you are aware, COVID-19 is highly contagious and is spreading at a rapid rate.  According to the World Health Organization, the populations most at risk of suffering a severe form of the disease include "[o]lder people, and those with underlying medical problems like cardiovascular disease [and] diabetes." (People Who Are at Higher Risk for Severe Illness, Centers for Disease Control

and Prevention, Mar. 22, 2020, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html). The CDC similarly has explained that individuals over the age of 65 and people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity are at higher risk for severe illness from COVID19. Diabetes and high blood pressure like Mr. Cannon's is considered an underlying medical problem which places him in the vulnerable population.

11. Additionally, as of July 24, 2020, there are 85,072 cases and 6,400 deaths due to COVID-19 in Michigan. *Coronavirus-Michigan Data,* July 24, 2020, https://www.michigan.gov/coronavirus/0.97553.7-406-9816398173---,00.html.

12. As numerous courts have recognized, "[t]he risk of contracting COVID-19 in tightly-confined spaces, especially jails, is now exceedingly obvious." Basank v. Decker, 2020 WL 1481503, at 5 (S.D.N.Y. Mar. 26, 2020).

One public health expert has explained: "If you wanted to set up a situation that would promote rapid transmission of a respiratory virus, you would say prison: it's close quarters, unsanitary, individuals in frequent contact." In such situations, it is "nearly impossible to provide infection control." (Daniel A. Gross, "'It Spreads Like Wildfire': The Coronavirus Comes to New York's Prisons," The New Yorker, Mar. 24, 2020.

Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails" as "extraordinarily high" due not only to the close quarters in which the inmates reside, but also the quality and quantity of available medical care and the fact that hundreds of individuals -- from staff to new arrestees -- enter and leave detention facilities daily. (Brie Williams, COVID-19 in Correctional Settings, Mar. 22, 2019, https://www.scribd.com/document/452807558/NY-Press-Conference-Brie-Williams-Remarks).

These dangers are not theoretical.  During the COVID-19 outbreak in China, prisons became hotbeds of infection despite stringent control measures, and press reports indicate that the same is now occurring at FCI Oakdale in Louisiana. (Zi Yang, "Cracks in the System:  COVID-19 in Chinese Prisons," The Diplomat, Mar. 9, 2020,  https://thediplomat.com/2020/03/cracks-in-the-system-covid-19-in-chinese-prisons/; Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana," Washington Post, Mar. 29, 2020, https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federalprison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.)

The CDC has recommended that high-risk individuals avoid crowds, keep space between themselves and others, and stay at home to avoid exposure to the

virus.  (Get Ready for COVID-19, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/get-ready.html.)

Despite BOP's best efforts, it is impossible for Mr. Cannon to practice such "social distancing" to protect himself.  In FCI Milan over 100 inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers, and sleep together in bunks beds only a few feet apart that are divided principally between two dormitories (as opposed to individual cells).  The two dormitories are separated only by the shared bathroom.  There is no place to self-isolate.  In short, measures being taken by BOP cannot help but be insufficient, and certainly he is unable to have someone clean his living environment as the CDC suggests.

13. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that substantial and compelling reasons warrant such a reduction."

14. Mr. Cannon has exhausted his administrative remedies and requested relief from the Bureau of Prisons on for home confinement on March 31, 2020. His request to the Bureau of Prisons was denied.

15. We respectfully submit that Mr. Cannon's pre-existing health conditions in combination with the COVID-19 pandemic provide extraordinary and compelling reasons to modify his sentence to permit his immediate release to home confinement. See Basank, 2020 WL 1481503 at *5 (The spread of COVID-19 "is measured in a matter of a single day -- not weeks, months, or years.").

16. Such action by this Court would not be unprecedented. As the number of COVID-19 cases has grown, courts have increasingly taken action to protect the health of at-risk inmates and detainees. See United States v. Campagna, 2020 WL 1489828 (S.D.N.Y. Mar. 27, 2020) (modifying defendant's sentence to replace his outstanding term of imprisonment with an equal period of home incarceration); United States v. Perez, No. 19 Cr. 297 (PAE), Amended Order, Dkt. No. 62 (S.D.N.Y. Mar. 19, 2020) (temporarily releasing pre-trial defendant from custody during the public health crisis); Coronel v. Decker, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020) (ordering plaintiffs' immediate release from ICE custody); Basank v. Decker, 2020 WL 1481503, at *7 (same).

17. Mr. Cannon urges this Court take immediate action to protect his health and safety. Mr. Cannon makes this application knowing that the crimes he committed were serious. He understands that a substantial term of incarceration was appropriate. At the time the Court sentenced Mr. Cannon, however, incarceration posed little risk to his health. In light of this unprecedented change in

circumstances, we respectfully request that the Court exercise its power to modify Mr. Cannon's sentence and direct that he be released to home confinement to serve the remainder of his sentence.

WHEREFORE, the Defendant LEROY CANNON JR., by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and respectfully requests this Honorable Court enter an order resentencing LEROY CANNON and early release from federal prison for the reason so stated herein.

Respectfully submitted,

/s/ Stefanie Lambert Junttila
Stefanie Lambert Junttila
Attorney for Defendant
    LEROY CANNON
500 Griswold St Ste 2340
Detroit, MI 48226-4484
attorneystefanielambert@gmail.com
Phone: (313) 963-4740

Date: July 25, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA   )
                           )   No. 2:15-CR-20783
                           )
                           )   Honorable Sean F. Cox
                           )
LEROY CANNON, JR.

_____/

SANFORD A. SCHULMAN             STEVEN P. CARES
Attorney for Defendant          U.S. Attorney's Office
LEROY CANNON                    211 W. Fort Street
500 Griswold Street, Ste. 2340  Suite 2001
Detroit, MI 48226               Detroit, MI 48226
(313) 963-4740                  313-226-9139
Fax: (248) 671-0353             Email: steven.cares@usdoj.gov
Email: saschulman@comcast.net

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
LEROY CANNON
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: attorneystefanielambert@gmail.com

**BRIEF IN SUPPORT OF DEFENDANT,  LEROY CANNON'S RENEWED MOTION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE**

9

NOW COMES the Defendant LEROY CANNON JR. by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and states in support of his Brief in Support of his Renewed Motion to Resentence Defendant and Request for Early Release as follows:

## STATEMENT OF ISSUES PRESENTED

**I.    Should this Honorable Court resentence Leroy Cannon and release him early from his prison sentence because of COVID-19 and his underlying health condition?**

      **Defendant answers. "Yes."**
      **Plaintiff answers: "No.**

## Statement of Facts

Defendant Leroy Cannon Jr. was sentenced to a term of (188) months with four (4) years supervised release upon release from imprisonment.

Defendant's current conditions of confinement are putting his health at risk. Defendant seeks immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable injury. Defendant is currently serving out his 188 month sentence at FCI Milan. Defendant was sentenced on September 14, 2016 and has a release date of December 31, 2028.

Mr. Cannon suffers from diabetes and high blood pressure.

Mr. Cannon is currently at the FCI Milan, a low-security facility that currently houses over 1300 inmates.

## Argument

Under the First Step Act, Mr. Cannon is eligible for reduced sentence and this Court can act *sua sponte* to adjust downwards Mr. Cannon's imposed sentence so that he is eligible for supervised release.

In addition, the public health recommendation is to release high-risk people from detention, given the heightened risks to their health and safety (ECF No. 6-1, PageID.87 (Declaration of Infections Disease Epidemiologist Joseph Amon)). The only way to prevent serious illness including death is to release all people with low risk factors.

Mr. Cannon is housed at FCI Milan, in Milan, Michigan. As the number of inmates testing positive for COVID-19 increased throughout the jails, and prisons the Governor of Michigan declared a state of emergency. (Executive Order No. 2020-4). This Order was followed by numerous orders closing Michigan schools on March 16, 2020, and prohibiting people attending large events in shared spaces on March 13, 2020. (Executive Order No. 2020-20). Mitigation efforts continued and people were advised to stay at home and restrictions were placed on the use of public places from March 22, 2020 through April 13, 2020 (Executive Order No. 2020-20). On March 24, 2020, the Governor temporarily suspended activities that are not necessary to sustain or protect life through April 13, 2020. (Executive Order No. 2020-21). The Governor has extended the stay at home/in place orders

several times to protect the health and safety of Michiganders as the COVID-19 cases continue to climb. Currently, the stay in place order in Michigan is not set to expire until June 12, 2020. *Gov. Gretchen Whitmer extends Michigan stay home order to June 12,* May 22, 2020, https://www.freep.com/story/news/local/michigan/2020/05/22/stay-at-home-order-extended-gretchen-whitmer/5245517002/.

Additionally, as of July 24, 2020, there are 85,072 cases and 6,400 deaths due to COVID-19 in Michigan. *Coronavirus-Michigan Data,* July 24, 2020, https://www.michigan.gov/coronavirus/0,97553,7-406-9816398173---,00.html.

The COVID-19 virus has directly impacted FCI Milan. According to the BOP, as of July 21, 2020, only twenty-five percent of BOP inmates have received a COVID-19 test. The BOP has a total of 142,944 inmates in custody, and only 36,012 tests have been completed or are pending. Additionally, 100 inmates and staff have died from COVID-19, and there are currently 4,517 inmates and staff currently positive with COVID-19, and 6,195 inmates in staff that have been positive for COVID-19 in the past bringing the total to 10,712 of current and past positive cases of COVID-19 for the twenty-five percent of the population tested. Additionally, the BOP has stated that there are currently three inmates, and one staff member at FCI Milan with currently positive with COVID-19. BOP: COVID-19 Update, July 25, 2020, https://www.bop.gov/coronavirus/. The number of

COVID-19 positive tests is likely much higher at FCI Milan since only twenty-five percent of the inmates have received a COVID test.

A well-known medical professional, Dr. Greifingert, spoke on a similar issue but relating to ICE facilities. Dr. Greifingert had stated that the only way to "prevent serious illness including death" in ICE facilities is to "release all people with risk factors." (ECF No. 20-3, PageID.374 (Declaration of Dr. Robert B. Greifingert).) Same can be said about FCI Milan.

On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019* (COVID-19) in *Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correctiondetention/guidance-correctional-detention.html. [Hereinafter "CDC Guidance 3/23/2020"].

Specifically, the CDC has noted that many detention conditions create a heightened risk of danger to its inmates. Risks include low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and

limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). Id.

The only adequate relief for Mr. Cannon is his release from confinement at FCI Milan. Social distancing, hygiene measures and proper diet are Mr. Cannon's only defense against COVID-19. These protective measures are exceedingly difficult at FCI Milan, if not impossible. Mr. Cannon shares toilets, sinks, phones, and showers, eats in communal spaces, and is in close contact with other inmates and officers.

Social distancing of at least six feet would be impossible at FCI Milan. Multiple doctors and public health experts across the country and world have stated that the only viable public health strategy available is risk mitigation.

In addition, matters are only getting worse in facilities like FCI Milan. On April 1, 2020, the Rikers Island jail complex's chief physician acknowledged that "infections are soaring" despite the facility's "following Centers for Disease Control and Prevention guidelines and having moved mountains to protect our patients." Miranda Bryant, *Coronavirus Spread at Rikers is a 'Public Health Disaster', Says Jail's Top Doctor*, The Guardian (Apr. 1, 2020), https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jailcoronavirus-public-health-disaster.

No matter what steps are taking at FCI Milan, Mr. Cannon is constantly at risk of his symptoms getting worse due to his underlying health conditions. The ongoing COVID-19 pandemic creates a high risk that absent an early release by this Court, Mr. Cannon will suffer irreparable harm in the form of loss of health or life as a result of contracting the COVID-19 virus, if he has not already. FCI Milan is unable to provide proper treatment for those who are experiencing symptoms of COVID-19 and are not being tested, and their condition could worsen and result in death.

The United States Attorney General issued a directive to consider early release for detainees who do not pose a public safety risk, as minimizing crowded populations is the only known way to mitigate spread of this pandemic. *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020); Executive Order, No. 2020-29 (COVID-19) (Mar. 26, 2020).

## Conclusion

Defendant Cannon has a better chance to stay healthy or seek immediate treatment at a hospital if needed if he were to be released from FCI Milan. Defendant's continued confinement at FCI Milan exposes him to greater symptoms of COVID-19 and possible death due to his underlying condition.

WHEREFORE, the Defendant LEROY CANNON, by and through his attorneys, SANFORD A. SCHULMAN and STEFANIE LAMBERT, respectfully requests this Honorable Court enter an order resentencing LEROY CANNON and early release from federal prison for the reason so stated herein.

Respectfully submitted,

/s/ Stefanie Lambert Junttila
Stefanie Lambert Junttila
Attorney for Defendant
    LEROY CANNON
500 Griswold St Ste 2340
Detroit, MI 48226-4484
saschulman@comcast.net

Date: July 25, 2020    Phone: (313) 963-4740

Certificate of Service

I, Stefanie Lambert Junttila, attorney at law, certify that on July 25, 2020, I caused a copy of this pleading to be served upon the Clerk of the Court and Government via E-file.

/s/ Stefanie Lambert Junttila
STEFANIE LAMBERT JUNTTILA